CLOTILDE PICCINIM ET AL. *vs.* THE CONNECTICUT
LIGHT AND POWER COMPANY (THE CONNECTICUT
LIGHT AND POWER COMPANY'S APPEAL FROM COM-
PENSATION COMMISSIONER).

First Judicial District, Hartford, March Term, 1919.

PRENTICE, C. J., RORABACK, WHEELER, BEACH and GAGER, Js.

Our Workmen's Compensation Act (§ 5388) does not exclude illegiti-
mate children from membership in the "family" of an injured
employee, nor preclude them as such members from securing
compensation as his "dependents," if they in fact live with and
are dependent upon him for support.

An unmarried woman living with a man as his wife is not entitled to
compensation under our Act.

The underlying principle of this kind of legislation is that the ends of
justice and equity will best be subserved and the general good
promoted, by lifting from the shoulders of unfortunate victims
of industrial mishaps and their dependents some measure of the
resulting burden, and casting it upon the industry which occasioned
it and, through that industry, upon society at large.

Argued March 4th—decided April 16th, 1919.

APPEAL by the defendant from a finding and award
of the Compensation Commissioner of the first district
in favor of the plaintiff children but not in favor of the
decedent's unlawful consort, taken to and reserved by
the Superior Court in Hartford County, *Case, J.,*
upon the facts found by the Commissioner, for the
advice of this court. *Judgment affirming award of
Commissioner, advised.*

Peter Salmon Salvatore Piedmonte, an employee of
the defendant, was instantly killed while he was en-
gaged in his work. His average weekly earnings were
$25.84. In 1909 the deceased and Clotilde Piccinim,
one of the claimants, under an agreement to marry,
never fulfilled, began to live together as husband and

wife. They continued to so reside together until his death. Three children were born to them during this period. They are joined with the mother as claimants, and are now eight, six, and four years of age, respectively. Subsequent to their birth they lived with their parents and were regularly supported by the deceased. The Commissioner denied compensation to the mother, and awarded $14 weekly for the period of three hundred and twelve weeks to the children, in equal amounts between them.

*William E. Thoms,* for the appellant (defendant).

*Ralph O. Wells,* for the appellees (plaintiffs).

PRENTICE, C. J. The Compensation Commissioner's award to the three children born of the illicit relations long existing between the deceased and Clotilde Piccinim, was made to them as dependents, and the only dependents, of the deceased at the time of his injury and resulting death, and as persons whose dependency was total. It is not contended by any of the parties that the Commissioner erred in withholding compensation from the deceased's unlawful consort, and the defendant does not dispute that the finding of facts establishes that if the three children were the deceased's "dependents" within the meaning of our Workmen's Compensation statute, they stood alone in that relation and that their dependency was total. The questions by possibility presented by the record thus become reduced to one concerning which the parties stand in opposition, and that is whether or not these children were entitled to be regarded as the deceased's dependents.

Our Act, as enacted in 1913, defines dependents as meaning and including "members of the injured em-

ployee's family or next of kin who were wholly or partly dependent upon the earnings of the employee at the time of the injury." Public Acts of 1913, Chapter 138, § 43. This definition has since remained unchanged, and appears in § 5388 of the Revision of 1918. The three children claimants in the present case satisfy all these statutory qualifications, if so be that they are to be regarded as members of the deceased's family, in which they in fact resided.

The word "family" is one of elastic meaning and is used in a great variety of significations. The wide range of its use is well illustrated by our own decisions. In some of its uses the test for determining membership is found in the collective quality of the residence of the persons concerned, and the unity of their domestic government and control. In those uses it is said to mean and embrace all the members of a collective body of persons living in one household and under one head and domestic government, including servants and others as well as parents, children and kin. *Dalton* v. *Knights of Columbus*, 80 Conn. 212, 215, 67 Atl. 510; *Crosgrove* v. *Crosgrove*, 69 Conn. 416, 422, 38 Atl. 219; *Wood* v. *Wood*, 63 Conn. 324, 327, 28 Atl. 520; *Hart* v. *Goldsmith*, 51 Conn. 479, 480. In other instances regard is had for relationship by blood or otherwise between the different members of the group, as well as to the unity of residence and domestic control. *Hart* v. *Goldsmith*, 51 Conn. 479, 480; *Dalton* v. *Knights of Columbus*, 80 Conn. 212, 216, 67 Atl. 510. In still other cases the factors of collectivity of residence and unity of headship are ignored, and that of relationship made to furnish the test of membership. *Hart* v. *Goldsmith*, 51 Conn. 479, 480; *Crosgrove* v. *Crosgrove*, 69 Conn. 416, 422, 38 Atl. 219; *Hoadly* v. *Wood*, 71 Conn. 452, 456, 42 Atl. 263; *Dalton* v. *Knights of Columbus*, 80 Conn. 212, 216, 67 Atl. 510. Again, it

is held that the term may be employed to designate individuals whom it is the right of its head to control and his duty to support. *Cheshire* v. *Burlington*, 31 Conn. 326, 329.

But whatever be the accepted meaning of the word as used in the statutory definition under review, the three children claimants will not be excluded from the family group to which the deceased belonged and over which he presided, unless that meaning is one which either directly or indirectly raises a bar of exclusion for them out of their illegitimacy. Had they been born of a lawful union between their father and mother, they would be able to satisfy every prerequisite of family membership which even the most restricted definition would embody, and to meet every requirement contained in any or all of them, whether it be of residence, relationship, duty to support or right to control. They belonged to the collective group living in the household which the deceased maintained and of which he was the head; they would, under the conditions named, have been related to him by the closest possible ties of blood; and his right to control and duty to support them would have been unquestioned. The question before us, therefore, comes down to this: Does their illegitimacy *ipso facto* forbid that they be regarded as members of the deceased's family for the purpose of receiving compensation?

The Act contains no express provision to that effect or language which, under accepted rules of construction, would lead to such interpretation. If, for practical application, it should be judicially said that such prohibition exists, it must be for the reason that their presence in the family group was in violation of law, or that their inclusion therein for the purposes of the Act would not be consonant with a sound public policy, either upon moral grounds or in the matter of justice

to employers, or that as illegitimates they should be penalized for their illegitimacy by being denied the rights and benefits accorded to all others under our Workmen's Compensation legislation.

It is, of course, true that one may not successfully assert a claim to membership in a family group, and thereby secure benefits provided by the law, whose presence in that group is in violation of law. *Scott's Case*, 117 Me. 436, 441,104 Atl. 794, 796; *Armstrong* v. *Industrial Commission*, 161 Wis. 530, 531, 154 N. W. 844. That is the position in which the mother of these children found herself, and the Commissioner has for that reason properly refused to recognize her as belonging to the deceased's family, and denied her claim to share in an award of compensation. *Gron* v. *Mass. Employees Ins. Asso.*, 2 Mass. Ind. Acc. Board, 736, 741; *Bustamente* v. *Gate City Ice & Precooling Co.*, 2 Cal. Ind. Acc. Com. 120, 121; *Salvadori* v. *Interborough R. T. Co.* 5 N. Y. State Dep. Rep. 438, 441.

The children's position in that household was a very different one. They were not only innocent of their parents' wrongdoing, but their father, in caring for them, was acting in obedience to the mandate of the law. It was alike his moral and legal duty to maintain them, and it was quite within his legal right to do so in the most natural and convenient way by taking them into his household. That he kept his unlawful consort there also, is a matter for which they were not responsible. They certainly should not be punished for his unlawful act in so doing, or hers in remaining.

There is nothing in their own conduct that calls for punishment, and we are unable to discover how the cause of morality is to be advanced by the treatment of innocent children, although born of illicit relations, as so far outcasts from the social and legal pale that they are to be denied the benefit of those beneficial

provisions which our law has adopted for the care, welfare and maintenance of those who, helpless of themselves, are dependent for their sustenance and support upon the labor of others engaged in industrial pursuits. From whatever point of view this general subject is looked at, it is, in its final analysis, but the meting out of punishment to innocent unfortunates for the wrongs of others, to deprive these children of the rights and benefits which our Workmen's Compensation legislation accords to all others similarly situated in all respects, save in the matter of the circumstances attending their coming into the world. See *Dickinson's Appeal*, 42 Conn. 491, 511, 512.

It has been suggested it is not fair and just to employers that they should be called upon to contribute toward the maintenance of illegitimate offspring of an injured employee, and that, therefore, it is not consonant with public policy that they should be so called upon. Looked at from one angle that may seem to be true. So, also, when viewed from a similar angle, to wit, that of the old common-law which attached liability to fault, it would appear to be in like manner unfair to employers that they should be compelled to assist in supporting the children or dependents of an employee who, without the employer's fault, has met with a mishap occasioning the loss or diminution of his earning power. But that is not the point of view of our compensation legislation. Compensation is not awarded either as the price of fault or as a measure of a duty owed to the injured employee. It is given in the executuion of a general public policy that sees, in its giving, a blessed relief to those called upon to suffer as the result of industrial accidents and a humane and wholesome social regulation. The underlying principle of this kind of legislation is that the ends of justice and equity will best be subserved and the general good

promoted, by lifting from the shoulders of unfortunate victims of industrial mishaps and their dependents some measure of the resulting burden, and casting it upon the industry which occasioned it and, through that industry, upon society at large. It is not the immediate employer who, by this procedure, ultimately bears the burden that he is in the first instance made to assume. In its final distribution society bears it. These children and all other children similarly circumstanced, whether they be legitimate or illegitimate, being in the world, must be supported. . If their means of support is withdrawn, society is compelled to supply it. Why may it not as well and fairly supply it in the method provided by the Workmen's Compensation legislation as in any other? The Act faces the certain prospect that individuals will have their earning power cut off or diminished, either permanently or temporarily, as the result of accidents attending their employment, and that other persons dependent upon them will be deprived for a longer or shorter time of their customary means of support, and seeks to provide a way in which the burden of that deprivation or diminution will be lightened. The result aimed at will be achieved only in part, as long as any class of these sufferers are excepted from the beneficial operation of its provisions. Is there any reason why it should not be fully achieved, and that all those who are called upon to suffer through industrial mischances be given an equal measure of relief in the manner the statute provides? We can conceive of none, and we are impelled to query whether, if it be true that this employer ought not, upon grounds of public policy, to be compelled to contribute to the maintenance of these children because their relationship to their father is not free from stain, the same test should not be applied to all claimants, so that all be required to establish their fitness to receive an award

of compensation by showing a record of stainless ancestry.

Counsel for the claimant children seeks to fortify his claim in their behalf by an appeal to that portion of § 10 of the Workmen's Compensation Act, now appearing in § 5350 of the General Statutes, which provides that any child under the age of eighteen years dependent upon his parent with whom he is living or from whom he is receiving support regularly at the time of the injury to such parent, there being no surviving dependent parent, shall be conclusively presumed to be wholly dependent for support upon the deceased employee. There is no need of such fortification. The position of the children as dependents and total dependents of the deceased, is sufficiently established by their membership in the deceased's family, taken in connection with the other attending circumstances found by the Commissioner. It would not be strengthened by holding that they were also children of the deceased within the meaning of the Act.

The courts of Maine and Michigan, both of which States have statutes similar to ours, have decided the question here at issue in full accord with our conclusions. *Scott's Case*, 117 Me. 436, 441, 104 Atl. 794, 796; *Roberts* v. *Whaley*, 192 Mich. 133, 138, 158 N. W. 209. The Industrial Accident Commission of California has upon repeated occasions similarly ruled. *Bustamente* v. *Gate City Ice & Precooling Co.*, 2 Cal. Ind. Acc. Com. 120; *Pollock* v. *Wagner Leather Co.*, 3 Cal. Ind. Acc. Com. 37; *Tarango* v. *McCombs*, 3 Cal. Ind. Acc. Com. 63. Under the English Act it has been held that an illegitimate child becomes a member of an injured employee's family in the same way and to the same extent as a legitimate. *Schofield* v. *Orrell Colliery Co.*, 100 L. T. Rep. 104, 105. The Scotch Act expressly provides that illegitimate children of an injured employee, in fact

dependent upon him, shall be included among his dependents. *Bowhill Coal Co.* v. *Neish*, 46 Scottish L. R. 250. The only jurisdiction, as far as we are aware, in which illegitimates have been denied compensation by reason of their illegitimacy, is New York, which has a statute radically different from ours in its definition of dependents. *Bell* v. *Terry & Trench Co.*, 177 N. Y. App. Div. 123/125, 163 N. Y. S. 733, 735.

The Superior Court is advised to render judgment affirming the award of the Commissioner.

In this opinion the other judges concurred.