No. 25,689.

RUBY C. MILLER, *Appellee*, v. GEORGE L. MILLER, and PHYLLIS MILLER, as Next Friend of GEORGE LANE MILLER, an Infant, *Appellants.*

SYLLABUS BY THE COURT.

1. SOLDIERS' COMPENSATION ACT—*Illegitimate Child of Veteran Entitled to Share in Compensation Due the Veteran.* Under the acts relating to compensation for veterans of the World War authorizing courts to hear applications of the wife or minor children for an allowance of the compensation due to a veteran of the World War for their support, and to obtain an order directing the compensation board to pay the compensation due into court for the use and benefit of such wife or minor children, an illegitimate minor child of the veteran is entitled to share in such compensation equally with legitimate children.

2. SAME—*Pleading by Interpleader Sufficient as Against Demurrer.* The averments of a pleading filed by the next friend of an illegitimate child for whom compensation was claimed examined, and held to be sufficient as against a demurrer thereto.

3. SAME—*Questions of Procedure Determined.* Some questions of procedure considered and determined.

Appeal from Allen district court; ROBERT E. CULLISON, judge. Opinion filed October 11, 1924. Reversed.

*L. O. Carter,* of Kansas City, for the appellant.
*C. S. Ritter,* of Iola, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an appeal from a ruling sustaining a demurrer to an application and interplea in a proceeding to direct the payment of a part of the compensation due to a veteran of the World War to an illegitimate minor child of the veteran.

George L. Miller served in the World War, was honorably discharged and became entitled to compensation. He was legally married to Ruby C. Miller in July, 1921, and thereafter a daughter was born of the marriage, named Wanita Ann Miller. It appears that he went from Kansas, where he lived, to Arkansas and there entered into a marriage relation with Phyllis Miller on July 14, 1922, and to that marriage a son was born on April 7, 1923, whose name is George Lane Miller. On October 15, 1922, an information was filed in the district court of Allen county, Kansas, against Miller charging him with failing to support his wife Ruby and her child, and when brought to Kansas, he entered a plea of guilty to the charge and was sentenced to confinement in the state reformatory for a period of two years. Thereafter Ruby brought an action against him for divorce, and on April 7, 1923, the divorce was granted, the custody of the child was awarded to her and it was adjudged that he should pay $15 per month towards the support of the daughter, Wanita. On June 4, 1923, Ruby C. Miller applied to the district court of Allen county for an order directing that the bonus or compensation due to George L. Miller be paid into court for the support of Wanita. An order was made authorizing and directing Ruby to take the necessary steps to establish the right of her former husband to the compensation and when allowed the compensation should be paid to the clerk of the court for the support of Wanita, and it was further ordered that the veteran should be enjoined from collecting or receiving such compensation. In August 1923, Phyllis Miller, who had become a resident of Kansas, instituted a proceeding in the district court of Wyandotte county, asking for separate maintenance for herself and child, from George L. Miller, and an order on the state compensation board for the compensation due him as a veteran of the World War. Ruby C. Miller appeared in that court and filed a pleading, when Phyllis Miller learned for the first time that there had been a proceeding in Allen county, and an order made there relating to the disposition and application of the compensation. She dropped the proceeding in Wy-

andotte county and made application to the Allen county court asking to be allowed to intervene in the compensation proceeding and setting up the facts relating to her marriage to the veteran and the birth of his son, and claiming a share of the compensation for the son of the veteran. The application to intervene was granted, whereupon she filed a pleading and interplea as next friend of her infant son, in which she alleged her marriage to Miller in Arkansas, that she married him in the belief that he was an unmarried man. She alleged the birth of the son who was the child of Miller, his subsequent arrest and conviction, that prior to the marriage to her he had served in the World War and was entitled to compensation, alleged that the order had been made in the district court of Allen county without knowledge by the court of the fact that Miller had an infant son, and had directed payment of the compensation to the daughter Wanita, without knowing that the son was entitled to receive at least one-half of the compensation to which the veteran was entitled, and asking the court to modify its former order and allow the son George one-half of the compensation for his maintenance, and asked such other relief as was proper. Ruby C. Miller filed a demurrer to the petition and interplea of Phyllis on the ground that the court was without jurisdiction of the defendant or the subject of the action, and that the petition and interplea did not state facts sufficient to constitute a cause of action. This demurrer was sustained by the court, and of this ruling complaint is made.

The court held that the intervener had not stated a cause of action and was not asking ultimate relief, but had merely asked ancillary relief in the divorce action, and also held that even if the application should be regarded as an independent action she was not entitled to the relief asked, and hence dismissed the application.

In support of the ruling of the court, it is urged that as the son George was the child of a bigamous marriage and therefore illegitimate he is not within the statutory provision granting compensation to minor children of a veteran. It is further urged that in the absence of a specific provision that illegitimate children should share in the bounty of the state, the legislature necessarily intended that only children born in lawful wedlock should receive the compensation earned by the service of the veteran. The statute provides that compensation of veterans shall not be subject to assignment, transfer, attachment, garnishment or execution, except by an order of the district court or a judge thereof; it provides an allowance for the

Miller v. Miller.

support of the wife or minor children of the claimant, and that if
the soldier has failed or neglected to file an application, the wife
may file for him, and an order may be issued directing the payment
of the compensation to the clerk of the court for the use and benefit
of the widow and minor children, if any.   (R. S. 73-142.)   As Ruby
C. Miller was divorced from the veteran she of course was not en-
titled to any part of the compensation due to Miller.   Under the
statute it was payable to the minor children of the veteran.   Who
are the minor children to whom reference is made?   Manifestly they
are those for whose life the veteran is responsible and to whom he
owes the obligation of maintenance.   The statute makes no dis-
crimination between legitimate and illegitimate minor children.   It
is an independent provision creating a new obligation of the veteran,
recognizing his responsibility to support his minor children and ap-
plying the compensation awarded to that purpose.   The theory on
which compensation is payable to wife or minor children is his ob-
ligation and duty to support them.   However, if there had been no
statute creating a specific obligation the father would still be liable
for the maintenance of his illegitimate child as well as one born in
lawful wedlock.   In *Doughty v. Engler,* 112 Kan. 583, 211 Pac. 619,
the court, after discussing the early common-law rule that parents
were under no obligation to support illegitimate children, determined
that this rule was repugnant to present-day conceptions of social
obligations, and so unadapted to our conditions, and so unsuitable
to the needs of the people, that it cannot be regarded as a part of
the law of this state.   It was decided:

"The father of an illegitimate child too young to care for itself is under a
nonstatutory obligation to support it, which may be enforced in an action
brought by it through its next friend." (Syl. ¶ 1.)

In the course of the opinion, holding that the obligation rested
on the father to maintain illegitimate children as well as those that
are legitimate, it was said:

"A sufficient reason for holding parents to be under a legal obligation, apart
from any statute, to support their legitimate child while it is too young to
care for itself, is that the liability ought to attach as a part of their responsi-
bility for having brought it into being.   If that reason is not found convincing,
it would be useless to seek others.  And it does not in the least depend for its
force upon the fact that the parents were married to each other, but is equally
persuasive where that is not the case.   It was true when Puffendorf elaborated
it and applied it to illegitimate children in 1672, and it is true now." (p. 585.)

In response to a suggestion that the bastardy act provided a

method of enforcing the liability of a father to support his illegitimate child, it was held that the action of the legislature in passing that act did not evidence an intention to make it the exclusive remedy of enforcing the father's liability, but that "the measure is one providing machinery for the enforcement of a duty already existing rather than one creating a new obligation." (p. 586.)

So here, the provision for the application of the compensation to the support of minor children must be regarded as the creation of a new obligation which is enforceable, unaffected by the existence of the bastardy act or of other and earlier provisions with reference to the maintenance of illegitimate children.

While the proceeding to direct the payment of the compensation and the applications therein, were entitled as in the divorce action, they formed no part of it. It was an independent proceeding brought under the compensation act. The application of Phyllis Miller to intervene was made in that proceeding. The court allowed her to intervene and set up the claims of the illegitimate son for a share of the compensation to which Miller was entitled. Having been allowed to intervene and plead in that proceeding, it was incumbent on the court to determine whether under the allegations of her pleading the illegitimate son was a minor child of the veteran and entitled to compensation within the meaning of the compensation law. It was alleged that her son was the child of the veteran, and that fact was admitted by the demurrer. Not being barred by the fact of illegitimacy, his right to a portion of the compensation was sufficiently shown by the allegations of the petition and interplea. The veteran had been given notice of the proceeding and must be deemed to have been in court throughout the proceeding and bound by the orders made. The controversy thereafter was between the two claimants as to their respective rights to the compensation due to George L. Miller. As the obligation to maintain minor children includes illegitimate children as well as legitimate, within the meaning of the statute, it follows that the court erred in sustaining the demurrer to the pleading filed, and hence the judgment is reversed and the cause remanded for further proceedings.