## HARGROVE v. LLOYDS CASUALTY CO. OF NEW YORK.

### No. 9907.

Court of Civil Appeals of Texas. Galveston.
Nov. 16, 1933.

Rehearing Denied Nov. 29, 1933.

467

A. T. Norman, of Houston, for appellant.

Vinson, Elkins, Sweeton & Weems, of Houston (C. M. Hightower, of Houston, of counsel), for appellee.

GRAVES, Justice.

This cause comes here upon this agreed statement of facts:

"(1) Oscar Wright, deceased, alias Dennis Armstrong, alias A. W. Wright, died from asphyxiation while in due course of his employment with the Houston Gas & Fuel Company, January 3, 1931; Defendant, Lloyds Casualty Company of New York, was the compensation insurer. Claims were filed before the Industrial Accident Board for compensation benefits by one Sula Wright, alleged to be common law or putative wife; claim was also filed by Carrie Smith, alleged to be a dependent sister; claim was also filed by Elizabeth Marie Hargrove, alleged to be a dependent infant child of the deceased; final ruling, award and decision was obtained in each instance, recovery being allowed Carrie Smith as a dependent sister, and denied to the other parties; appeals were duly perfected by each claimant, and previous to trial the cases were all duly consolidated by agreement and order of Court, under No. 195,643, and thereafter entitled Carrie Smith et al. vs. Lloyds Casualty Company of New York.

"(2) The trial of this cause was to a jury, and previous to the rendering of judgment Sula Wright, plaintiff in cause No. 196,682, was disposed of by the Court entering an agreed judgment, dismissing her cause of action when she failed to appear and prosecute the same.

"(3) In answer to special issues the jury found from the evidence that the deceased, Oscar Wright, 'was not contributing in a substantial way to the support and maintenance of Carry Smith', and also found from the evidence 'that Carrie Smith was not dependent upon Oscar Wright for contributions in whole or in part for her support.' Thereupon, judgment was entered by the Court setting aside the final ruling, award and decision in the claim of Carry Smith before the Industrial Accident Board, and denied her any recovery in this suit.

"(4) So far as this appeal is concerned, the parties agree the evidence showed that Elizabeth Hargrove, mother of Elizabeth Marie Hargrove, minor appellant, was not divorced from her husband, John Hargrove, at the time of the birth of such child; that Elizabeth and John Hargrove had not lived together or cohabited for probably four (4) years.

"That the deceased, Oscar Wright, and Elizabeth Hargrove began living together and cohabiting on and after July 6, 1929, and continued thereafter to live together and cohabit until his death; that appellant, Elizabeth Marie Hargrove, was the child of Oscar Wright and said Elizabeth Hargrove; born July 9, 1930, at Hermann Hospital, a charitable institution within the City of Houston; that Oscar Wright furnished the money and paid for the incidental expenses in connection with the mother's care, transportation to and from hospital, medicines, etc., and furnished room, food and clothing for the child and its mother from the time of its birth until his death; that Oscar Wright and Elizabeth Hargrove lived together in all respects, apparently as man and wife, and that the deceased, Oscar Wright, lived with and provided a home for Elizabeth Hargrove and his baby daughter, Elizabeth Marie Hargrove, owned and recognized such child as his own; that he held the mother of such child out to their friends as his wife, and claimed and owned the baby as his baby at all times after its birth; that the deceased supported such child from the time of its birth until his death, in his own home, and that appellant, Elizabeth Marie Hargrove, and its mother, Elizabeth Hargrove, had no other means of support.

"(5) It is agreed that from the time Oscar Wright and Elizabeth Hargrove began living together and cohabiting until the time of the death of Oscar Wright, neither attempted, nor in fact did, enter into marriage, either putative, common law or ceremonial; and in fact the relationship was illicit.

"(6) It is agreed that appellant, Elizabeth Marie Hargrove, was an illegitimate child of Oscar Wright at the time of his death, born out of lawful wedlock, while the mother was undivorced from a previous husband.

"(7) In answer to Special Issues the jury found from the evidence that Oscar Wright was the father of the child, Elizabeth Marie Hargrove; and,

"That Elizabeth Marie Hargrove was dependent upon the deceased, Oscar Wright, for the necessities of life at the time of his death.

"It is agreed there was evidence to support the verdict of the jury.

"(8) It is agreed that there was ample and sufficient evidence to support the verdict of the jury and the judgment entered thereon that Oscar Wright 'was not contributing in a substantial way to the support and maintenance of Carrie Smith', and also that Carrie Smith 'was not dependent upon Oscar Wright for contributions in whole or in part for her support' at the time of his death. It is also agreed that the evidence showed Carrie Smith was not a dependent of Oscar Wright in the Workmen's Compensation Act.

"(9) After verdict of the jury, plaintiff, Elizabeth Marie Hargrove, and defendant, Lloyds Casualty Company of New York, each duly filed motion for the entry of judgment in their favor; that judgment was not entered until the 23rd day of June, 1932, when the Court entered judgment for defendant, Lloyds Casualty Company of New York."

■ The other parties to the cause in the lower court not having appealed, and it having been thus so agreed that the appellant was the illegitimate child of Oscar Wright; on account of whose death she claimed the compensation sued for, the sole question presented for this court to determine is whether or not, under our Compensation Statute, an illegitimate child is entitled to take.

That question has been answered in the negative by our Texas appellate courts in the following cases: United States F. & G. Co. v. Henderson et al. (Tex. Civ. App.) 53 S.W.(2d) 811; Sanchez v. Texas Employers' Insurance Ass'n (Tex. Civ. App.) 51 S.W.(2d) 818; Travelers' Insurance Co. v. Peters (Tex. Civ. App.) 280 S. W. 310.

Agreeing with those holdings, this court affirms the judgment rendered below.

No extended discussion of the matter is deemed necessary; the directly applicable portions of our statutes, R. S. art. 8306, § 8a, and article 8309, are these: "The compensation provided for in the foregoing section of this law shall be for the sole and exclusive benefit of the surviving husband who has not for good cause and for a period of three years prior thereto, abandoned his wife at the time of the injury, and of the wife who has not at the time of the injury without good cause and for a period of three years prior thereto, abandoned her husband, and of the minor children, parents and stepmother, without regard to the question of dependency, dependent grandparents, dependent children and dependent brothers and sisters of the deceased employee. * * * The words 'legal beneficiaries' as used in this law shall mean the relatives named in section 8a, part 1, of this law."

Without much ado, our own courts have held in the cases cited supra that the words "children" and "dependent children" as used in these acts mean legitimate children, wherefore illegitimate ones are not capable of taking the benefits therein provided.

Most if not all the authorities cited and relied upon in the able brief of the appellant for a contrary conclusion are interpretations of statutes in other states which provide for compensation to the members of deceased's "family or household"; notable among these is the Massachusetts act, upon which, in some respects at least, our own was based, the provision there being this: " 'Dependents' shall mean members of the employee's family or next of kin who were wholly or partly dependent upon the * * * employee for support at the time of the injury." Part 5, § 2, Massachusetts Workmen's Compensation Act (St. 1911, c. 751, pt. 5, § 2). See, also, Gritta's Case, 236 Mass. 204, 127 N. E. 889.

From and upon such statutes the courts seem to have built what may perhaps not inappropriately be denominated the "family doctrine" in holding that illegitimate children are capable of taking the benefits thereunder; but there is a distinct line of cleavage between statutes and decisions of that sort and our own, where no such statutory intendment exists, as is pointed out by the Supreme Court of Michigan in Bassier v. J. Connelly Construction Company, 227 Mich. 251, 198 N. W. 989; see, also, Scott v. Independent Ice Co., 135 Md. 343, 109 A. 117.

■ It is true that our act, along with such laws generally, is entitled to be liberally construed with a view toward effectuating the purposes of its enactment, but it would seem to be carrying that rule over the brink to assume one of those objectives to have been the encouragement of men and women to lie up ad libitum in illicit relationships and produce illegitimate offspring—as these negroes did in this instance—with the expectation of their being accorded the same rights under this expressed policy of the state as children born in lawful wedlock; at any rate, this court cannot, with the lights before it, so hold.

The judgment of the learned trial court will therefore be affirmed.

Affirmed.