IN RE DRAGONI
LOPO ET AL. v. UNION PACIFIC COAL CO., "B"
MINE, SUPERIOR

(No. 2070; May 25, 1938; 79 Pac. (2d) 465)

144

For the appellant, the cause was submitted on the brief of *T. S. Taliaferro, Jr.* and *A. L. Taliaferro,* of Rock Springs, and *John U. Loomis* of Cheyenne.

For the respondents, the cause was submitted upon the brief of *Joseph Galicich* of Rock Springs.

There was also a brief filed with permission of court by *Ray E. Lee,* Attorney General; *Thomas F. Shea,* Deputy Attorney General; and *William C. Snow,* Assistant Attorney General, all of Cheyenne, on behalf of the State Treasurer.

*Joseph H. Galicich* in reply to brief of State Treasurer.

150

KIMBALL, Justice.

This is an appeal by the employer from an order of award under the Workmen's Compensation Law. The workman, Constantino Dragoni, sometimes known as Charles Dragon, was accidently killed in October, 1935, while working in the employer's coal mine. The order of award is for the benefit of five claimants, who are non-resident, alien, illegitimate children under 18 years of age, surnamed Lopo. The workman was a native of Italy and married there in 1914. In 1918 he separated from his wife on discovering that she had been guilty of adultery while he was absent from home during the world war. There was no divorce, and could not have been under Italian law. From 1919 to 1923 the workman lived with Maria Lopo in his own house in Italy,

and during that time there were born to Maria three children one of whom died shortly after birth. The workman came to this country in September, 1923. The children were left in Italy with their mother who gave birth to another child in April, 1924. The workman was in Italy from April to August, 1927 and again from April to September, 1932, and following each of these visits Maria gave birth to another child, one in December, 1927, the other in January, 1933. The workman recognized the children as his, and made regular and substantial remittances to the mother for the support of her and the children. The trial court found that the claimants are the children of the workman and Maria Lopo who were never married; that the children are non-resident aliens who were supported by the workman in his lifetime and were dependent members of the workman's family.

An amendment of article 10, section 4, of the state constitution authorized the enactment of a workmen's compensation law for payment of compensation to persons injured in extra-hazardous employment "or to the dependent families of such as die as the result of such injuries." The amendment contains no definition of the term "dependent families." The act of the legislature contains the following (Section 124-106-7, subsections (j) and (k), R. S. 1931, as amended by laws of 1935, ch. 100, sec. 2) :

(j) " 'Dependent families' as used in this chapter means such members of the workman's family as were wholly or in part actually dependent upon the workman for support at the time of the injury. No spouse shall be entitled to the benefits of this chapter nor shall such fact influence any awards made hereunder unless he or she shall have been married to the workman by a marriage duly solemnized by legal ceremony at the time of the injury;"

(k) " 'Child or children' means the immediate offspring or legally adopted child or children of the injured workman, boys under eighteen (18) years of age and girls under eighteen (18) years of age (and over said age, if physically or mentally incapacitated from earning) and shall also include legitimate children of the injured workman born after his death or injury. In other cases, questions of family dependency in whole or in part shall be determined in accordance with the fact, as the case may be, at the time of the injury; the foregoing definition of 'dependent families' shall not include any of the persons named, who are aliens residing beyond the jurisdiction of the United States of America, except a surviving widow or boys under eighteen (18) years of age or girls under eighteen (18) years of age, or parent or parents, and as to such nonresident aliens the rate of compensation shall not exceed thirty-three and one-third per cent. (33⅓%) of the rates of compensation herein provided."

The first and controlling question is whether the claimants are "children" of the deceased workman within the meaning of the word as used in the law. It is not contended that the words "boys" and "girls" can be given a broader meaning than "children." The law originally (Laws 1915 ch. 124) spoke only of "children" under 16 years; later, separate mention was made of boys and girls because boys under 16 and girls under 18 were recognized as children, and this separate mention of them has continued though the distinction on account of age has been abandoned.

We cannot agree that the meaning of the word "children" in Sub-section (k), supra, is enlarged by the words "immediate offspring," that follow. The ordinary meaning of "offspring" is issue or lineal descendents of any degree. "Immediate offspring" has no broader meaning than "children." Adams v. Law, 17 How. 417, 421; Spencer v. Title Guarantee etc. Co.,

222 Ala. 485, 132 So. 730. The words "immediate off-spring" were not in the original act but came in by amendment in 1933. If these had been the only words added we should be inclined to hold that the only purpose was to make it clear that the word "children" did not include grandchildren, step-children or adopted children. The whole of the amendment of 1933 made the section say that "child or children" mean *the immediate offspring or legally adopted child or children of the injured workman,* the italicized words being added. We do not think the words "immediate offspring" in the amendment were intended to enlarge the meaning of the words "child or children." See Marshall v. Wabash R. Co., 120 Mo. 275, 279, 25 S. W. 179.

It is a rule of interpretation that words having a well-settled meaning in the jurisprudence of a country are to be understood in that sense when used in statutes unless a different meaning is unmistakably intended. Lewis' Sutherland, Stat. Cons. § 398. It is declared by statute that "technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import." R. S. 1931, § 112-101. "The common law of England as modified by judicial decisions, so far as the same is of a general nature and not inapplicable . . . shall be the rule of decision in this state when not inconsistent with the laws thereof." § 26-101. Knowledge of the settled principles of statutory interpretation must be imputed to the legislature. Lewis' Sutherland, supra, § 499; Shellenberger v. Ransom, 41 Neb. 631, 649, 59 N. W. 935, 941. The cases, texts and law dictionaries are practically unanimous in declaring that *prima facie* the word "children" in a statute means legitimate children. The rule is applied even to private writings. It was in a will case (Wilkinson v. Adam, 1 Ves. & Bea. 422, 462, 35 Eng. Rep. 179) that Lord Eldon used this emphatic language: "The rule cannot be stated

too broadly that the description, 'child, son issue,' every word of that species, must be taken *prima facie* to mean legitimate child, son or issue." The rule has been applied in cases under Lord Campbell's Act (9 & 10 Vict. c. 93), and like statutes enacted in this country. The English law was entitled "an act for compensating the families of persons killed by accident." Actions under it were for the benefit of the "wife, husband, parent and child" of the person whose death had been caused by the defendant, and the damages were intended as compensation for the "injury resulting from such death." See Coliseum Motor Co. v. Hester, 43 Wyo. 298, 309, 2 P.(2d) 105. It is held in England that the word "child" in the act means legitimate child. Langsdon v. _____, 15 L. T. (O. S.) 521; Dickinson v. Northeastern Ry. Co., 2 Hurl. & Colt. 735, 159 Rep. 304.

In this country under state wrongful death statutes similar to Lord Campbell's Act, the rule of the English cases has been followed, with a modification which apparently was first definitely announced in Marshall v. Wabash R. Co., 120 Mo. 275, 25 S. W. 179. A Missouri statute declared, as does our section 88-4005, that illegitimate children and their mother shall inherit from each other, and it was held that as this statute removed the principal common-law incapacity of an illegitimate child so far as he and his mother were concerned, the words parent and child in the wrongful death statute applied to a mother and her illegitimate child. Other decisions to the same effect are Goldmyer v. VanBibber, 130 Wash. 8, 225 Pac. 821, and cases cited. See Middleton v. Luckenbach, S. S. Co., 5 F. Supp. 238, and s. c. on appeal, 70 F. (2d) 326, under the Federal Death Act. It may be noted in this connection that it is held that the word "children" as a description of beneficiaries under the federal Employer's Liability Act, includes only those children who have the rights

of legitimate children under the inheritance laws of the state where the act is being enforced. Hiser v. Davis, 234 N. Y. 300, 137 N. E. 596.

We turn to cases under the various state Workmen's Compensation Laws. They are in accord in holding that the word "children," as a description of beneficiaries, does not refer to or include the illegitimate children of a workman. Bell v. Terry & Tench Co., 163 N. Y. Supp. 733, 177 App. Div. 123; Scott v. Independent Ice Co., 135 Md. 343, 109 Atl. 117; Murrill v. Industrial Com., 291 Ill. 334, 126 N. E. 189; Stoker v. Industrial Com., 127 Oh. St. 13, 186 N. E. 616. Perhaps, on authority of the noticed cases under wrongful death statutes, "children" may include those illegitimates whose right of inheritance is recognized in the laws of descent (see Marshall v. Industrial Com. 342 Ill. 400, 174 N. E. 534), but that question is not before us as the claimants are not of the classes of illegitimates whose right is so recognized. R. S. § 88-4005.

There are several cases, which we should not care to question, holding that illegitimate, dependent children who are members of the workman's family or household are entitled to benefits under those provisions of the law for compensation of "dependents" or "dependent families." Roberts v. Whaley, 192 Mich. 133, 158 N. W. 209, L. R. A. 1918A, 189; Scott's Case, 117 Me. 436, 104 Atl. 794; Piccinim v. Connecticut L. & P. Co., 93 Conn. 423, 106 Atl. 330; Gritta's Case, 236 Mass. 204, 127 N. E. 889. These cases either do not question or expressly approve the general rule in regard to the statutory meaning of the word "children" (in Michigan "lineal descendants"), and simply hold that illegitimate children may in certain circumstances be dependents and members of a family, and receive compensation as such. See Bassier v. J. Connelly Const. Co., 227 Mich. 251, 255; 198 N. W. 989; Olson's Case, 247 Mass. 570, 142 N. E. 808.

Counsel for claimants, relying on the cases just referred to, contends that the claimants, though not children within the meaning of the act, are entitled to compensation as "members of the workman's family . . . wholly or in part actually dependent upon the workman for support at the time of the injury," the definition in section 124-106-7 (j), supra, of "dependent families." If it should be conceded that this definition includes dependents other than spouses, children and parents (the only ones for whom provision is made in the compensation schedule, §. 124-120, amended Laws of 1935, ch. 100, sec. 5), it would not aid the present claimants, for they are non-resident aliens, and as to them there is a particular and more restricted definition. Sub-section (k), supra, declares that "the foregoing definition of 'dependent families' shall not include any of the persons named, who are aliens residing beyond the jurisdiction of the United States of America, except a surviving widow or boys under eighteen years of age or girls under eighteen years of age, or parent or parents." So the present claimants are not "family dependents" unless they are "children."

We must hold that the words "children," "boys" and "girls" in the act mean "legitimate children." We do not fear that this will give the law a meaning not intended by the legislature. Our law bears evidence of having been drafted after study of similar acts previously adopted in other states and in England. In practically all of them there was some definition of the words "child or children." Often some classes of illegitimate children were expressly included. Our legislature did not see fit to do this. If they had, they probably would at least have limited the class (as in most other acts) to illegitimates who were acknowledged, recognized or legitimated before the injury.

The employer's abstract of the record fails in several respects to comply with our rule 37, 42 Wyo. 540.

However, as the record is not large, the facts not in serious dispute, and the question of law in which the state, as custodian of the fund, is interested (see Marsh v. Aljoe, 41 Wyo. 220, 227, 284 Pac. 261), we have thought it proper not to dismiss the appeal, but to tax costs as though the order appealed from had been affirmed.

*Reversed.*

BLUME, Ch. J., and RINER, J., concur.