231 Kan. 401 (1982)
646 P.2d 471
RANDAL PAUL GROSS, a minor, by his mother and next friend, MYRA GROSS, Plaintiff-Appellant,
v.
RICHARD O. VANLERBERG, Defendant-Appellee.
No. 52,995
Supreme Court of Kansas.
Opinion filed June 11, 1982.
John Ivan, of Shawnee Mission, argued the cause, and Charles Rooney, Sr., of Topeka, and David L. Miller, of Shawnee Mission, were with him on the brief for the appellant.
Marc A. Elster, of Gardner, Davis, Kreamer, Norton, Hubbard & Ruzicka, Chartered, of Olathe, argued the cause, and Hugh H. Kreamer, of the same firm, was with him on the brief for the appellee.
The opinion of the court was delivered by
PRAGER, J.:
This is a nonstatutory action commenced by the mother of plaintiff, Randal Paul Gross, a ten-year-old minor child, seeking an adjudication that the defendant, Richard O. VanLerberg, was the natural father of plaintiff and an order requiring the defendant to provide for the support and education of the plaintiff. The action was commenced on November 29, 1977. Defendant VanLerberg died on February 1, 1979, while the action was pending. His will was thereafter admitted to probate, and coexecutors were appointed and qualified. The plaintiff then moved to substitute the coexecutors as parties defendant. This motion was followed by a motion of the defendant to dismiss the action.
The district court denied the motion for substitution and entered *402 judgment in favor of the defendant. In his memorandum decision, the trial judge stated:
"[A]bsent a statute expressly providing for the survival of a cause of action, or of an action to establish paternity and support of an illegitimate child, neither the right of action nor an action already instituted survives the death of the putative father, so no new proceeding can be instituted against the decedent's estate, and an existing action which has not reached judgment abates and cannot be continued against decedent's personal representative."
Citing 10 C.J.S., Bastards § 47; 10 Am.Jur.2d, Bastards § 97; 58 A.L.R.3d 188. The trial court reasoned that the parental obligation to support legitimate children terminates at death, and illegitimate children should not be treated more favorably. Further, the court observed that it would be extremely severe and very questionable policy to allow a living woman to swear the paternity of illegitimate offspring upon a dead man. The court noted the provisions of K.S.A. 60-225(a)(1), K.S.A. 60-1801, and K.S.A. 60-1802, and arrived at the conclusion that plaintiff did not have a cause of action or a claim for relief against a deceased parent, any more than a legitimate child, and therefore, this cause of action for support did not survive the death of the defendant.
Plaintiff appealed to the Court of Appeals which reversed in a split decision in a published opinion, Gross v. VanLerberg, 7 Kan. App.2d 99, 638 P.2d 365 (1981). The majority opinion by Judge Spencer held that the father of an illegitimate child has a duty to support similar to that imposed upon the father of a legitimate child where the relationship of father and child has been established by acknowledgment of paternity or the judgment of a court of record having jurisdiction of the case. The opinion recognized, however, that the obligation of a father to support his child, whether legitimate or illegitimate, ends with the death of the father, absent enforceable contractual obligations to the contrary. The majority upheld the trial court in its conclusion that the portion of the action seeking support for plaintiff from the deceased did not survive and thus abated on the death of the defendant.
The court then proceeded to determine this additional issue: Whether a nonstatutory action for support survives the death of the putative father to the limited extent of determining paternity, even though the action for support abated. The majority of the court held that the portion of the action seeking a determination of the status of the plaintiff as the child of the defendant did not *403 abate at the death of the defendant. Judge Meyer disagreed with the majority and filed a dissenting opinion on this issue. The majority opinion by Judge Spencer and the dissenting opinion of Judge Meyer present an excellent discussion on the issue and each cites case law in support of his respective position. In view of the importance and novelty of the issue, the Supreme Court granted the defendant's petition for review.
We have carefully considered the matter and have concluded that the trial court and Judge Meyer were correct in holding that the entire action did not survive, and thus, abated on the death of defendant VanLerberg. In reaching this conclusion, we have considered together several Kansas statutory provisions which in our judgment clearly establish the legislative intent. Generally, it may be stated that the matter of legitimatization of a child is a creature of statute. The statutes of the different states are widely different, and each must be construed and given effect according to its own terms. The courts throughout the nation, however, are in substantial agreement that, absent a statute expressly providing for the survival of an action to establish paternity of an illegitimate child, neither an action brought after the death of the putative father nor an action already instituted but not completed before the death of the putative father survives the death of the father. This subject is discussed in a comprehensive annotation in 58 A.L.R.3d 188, where many cases are cited on the issue. On page 106 of his dissenting opinion Judge Meyer cites cases from various jurisdictions which follow the majority rule.
As stated by Judge Meyer in his dissenting opinion, the rationale for the rule varies from state to state. Some cases note the quasi-criminal nature of bastardy proceedings. Other cases observe that it would be an extremely severe and very questionable policy to allow a living woman to swear the paternity of her illegitimate offspring upon a dead man. Most of the cases noted that, under the common law, all bastardy proceedings abated upon the death of the putative father and left it up to the legislature to modify the harshness of the common law in this particular. One court opined that while a legitimate child could be disinherited by the father, to allow an illegitimate child to establish paternity after the death of the father would prevent the father from exercising that option and thus give the illegitimate offspring an advantage over the legitimate offspring.
*404 The question of the survival of causes of action under the Kansas Code of Civil Procedure is governed by K.S.A. 60-1801 and K.S.A. 60-1802, which provide as follows:
"60-1801. Survival of actions; what causes of action survive. In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to the person, or to real or personal estate, or for any deceit or fraud, or for death by wrongful act or omission, shall also survive; and the action may be brought notwithstanding the death of the person entitled or liable to the same."
"60-1802. Abatement. No action pending in any court shall abate by the death of either or both the parties thereto, except an action for libel, slander, malicious prosecution or for a nuisance."
It should be noted that a nonstatutory action for support is not one of the causes of action which survives under the provisions of K.S.A. 60-1801. In its memorandum decision sustaining the defendant's motion to dismiss, the trial court discussed the relationship between K.S.A. 60-1801 and 60-1802. The court noted that in reliance on K.S.A. 60-1802, the plaintiff contended that he had a right to proceed with his cause of action in this case. The court then observed that, when considering the matter of the abatement of an action due to the death of a party, it is essential that one maintain a clear distinction between an "action" and a "cause of action." The term "cause of action" refers to the substantive application of law to the facts; in other words, the substance of the litigation. The word "action" refers to the procedural aspect of a suit. Thus, where the original cause of action survives the death of a party and a new party is substituted, the original proceeding does not arbitrarily terminate. An action does not abate if the cause of action survives. Conversely, where the cause of action does not survive, the action terminates on the death of the defendant. The court then reasoned that, by the express provisions of K.S.A. 60-1801, the legislature specifically provided which causes of action survive the death of a party. On the other hand, the purpose of K.S.A. 60-1802 is not to govern which causes of action survive the death of a party but only to effectively provide for the continuance of the pending litigation with substitute parties in those cases where the underlying cause of action survives.
The distinction between abatement of a cause of action because of nonsurvival and a statutory provision for substitution of parties for the decedent is discussed in 1 Am.Jur.2d, Abatement, *405 Survival, and Revival §§ 47, 48, where cases from various jurisdictions are cited. We have concluded that the trial court correctly interpreted K.S.A. 60-1801 and 60-1802 in holding that whether a particular cause of action survives the death of a party is to be determined by K.S.A. 60-1801. K.S.A. 60-1802 simply provides the procedure for the continuation of an action by substitution of parties in cases where the cause of action survives the death of a party.
The legislature provided an action to determine paternity in K.S.A. 38-1101 et seq. Under K.S.A. 38-1101, an action to determine paternity must be brought in the name of the State of Kansas on the relation of the unmarried woman as complaining witness. Under K.S.A. 38-1104, the time limitation for instituting such an action is one year after the birth of the child whose paternity is in issue. The death of the child does not abate or bar the action, K.S.A. 38-1107. Under K.S.A. 38-1108, the death of the mother does not abate an action to establish paternity, if the child is living, but the action may be continued in the name of the child. K.S.A. 38-1109 provides that, in the case of the death of the alleged father, the cause of action survives and the action may be prosecuted against the personal representatives of the deceased person. It is important to note that the legislature did not provide that an action to determine paternity could be brought in the first instance by the child against his putative father.
Under Kansas law, a child without parental support or claiming an interest in specific property or contractual or statutory benefits, is afforded a number of remedies. For example, under K.S.A. 59-501, for the purpose of distribution of property of a decedent, the word "children" is defined as including illegitimate children when applied to mother and child, and also when applied to father and child (1) where the father has notoriously or in writing recognized his paternity of the child, or (2) his paternity thereof has been determined in his lifetime in any action or proceeding involving that question in a court of competent jurisdiction. K.S.A. 59-501 thus governs the right of an illegitimate child to inherit from his putative father. This statute requires more than proof of paternity; it requires a showing that the father notoriously or in writing recognized his paternity of the child. If the illegitimate child relies on a finding of paternity by a court, the decree of paternity must have been entered during the lifetime of *406 the father in order to be sufficient to establish a right of inheritance.
The Kansas cases have protected the right of an illegitimate child to inherit from his putative father where the claim has been asserted in different kinds of actions. Paternity has been established and the right of inheritance has been litigated and protected in actions for ejectment or partition of real property. McLean v. McLean, 92 Kan. 326, 140 Pac. 847 (1914) (ejectment); Smith v. Smith, 105 Kan. 294, 182 Pac. 538 (1919) (partition of real estate); Nolting v. Holt, 113 Kan. 495, 215 Pac. 281 (1923) (ejectment and for partition). In addition, a child may claim and prove paternity for purposes of inheritance in a proceeding for administration of the putative father's estate. In this regard, see Record v. Ellis, 97 Kan. 754, 156 Pac. 712 (1916); Jensen v. Reeble, 167 Kan. 1, 204 P.2d 703 (1949); In re Estate of Julian, 184 Kan. 94, 334 P.2d 432 (1959).
In Miller v. Miller, 116 Kan. 726, 229 Pac. 361 (1924), an illegitimate child was permitted to assert a claim for benefits provided under certain statutes relating to compensation for the children of veterans of World War I. In Green v. Burch, 164 Kan. 348, 189 P.2d 892 (1948), it was held that an illegitimate child was entitled to assert a claim and recover benefits under the workmen's compensation act as a dependent of the deceased workman.
The foregoing cases are not intended as a complete listing of cases where paternity has been an issue and determined after the death of the putative father. They clearly show, however, that the issue of paternity has long been recognized as one for determination by our courts, even though the putative father at the time of such determination is deceased. It must be recognized, however, that, in each of the cases cited, the illegitimate child asserted a claim involving his rights in specific property or benefits provided by law. There are no cases in Kansas, however, which recognize the right of an illegitimate child to bring an action solely for the purpose of determining paternity in the abstract, where the rights of the child in specific property are not involved or where the child is not claiming a right of inheritance in the estate of the putative father or benefits as a child under some compensation law.
On the basis of the above rationale and under the facts of this *407 case, we hold that the nonstatutory action for support brought by the plaintiff against the defendant did not survive the death of the defendant and abated in its entirety when the defendant's death occurred.
We have thus concluded that the trial court correctly decided the case and that the judgment of the district court dismissing the action must be upheld. The judgment of the district court is affirmed. The judgment of the Court of Appeals reversing the district court is reversed.
SCHROEDER, C.J. and HERD, J., concur in the result.