No. 56,075

STATE OF KANSAS, *ex rel.* Secretary of Social and Rehabilitation Services, *Plaintiff-Appellee,* v. ANTHONY J. CASTRO, *Defendant-Appellant.*

(684 P.2d 379)

Opinion filed June 8, 1984.

*Michael E. Riling,* of Riling, Norwood, Burkhead & Fairchild, Chartered, of Lawrence, argued the cause and was on the brief for the appellant.

*Calvin K. Williams,* of Ottawa, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by the secretary of Social and Rehabilitation Services (SRS) to recover from a father payments made to support his three minor children under the federal program for Aid and Services to Needy Families with

Children (AFDC). The defendant in the action is Anthony J. Castro, husband of Theda Castro and father of three minor children. The evidentiary record in the case is rather sparse. The parties stipulated at the trial as to support payments made by SRS and the marital history of the parties. The defendant, Castro, and his wife, Theda, were married on January 30, 1970. Two children were born and the Castros were divorced on July 23, 1976. They were then remarried on October 27, 1976. A third child was born as a result of their reunion. SRS made child support payments to Mrs. Castro from July 1975 to June 1976, and then again from January 1980 to September 1982. SRS produced copies of the checks paid to Mrs. Castro and the times and amounts of the payments were undisputed.

The only witness called at the trial by either party was defendant Castro, who testified that he had from time to time provided money for the children for clothing, shoes, and food. This testimony was rather vague and defendant did not attempt to itemize any support provided. It was established that defendant had maintained a health insurance policy for his family through his employer, but he did not provide the court with any figures as to how much he spent on this item during the course of the separation. Defendant further testified that he knew his family was receiving aid from SRS during 1981 and 1982. Through a voluntary agreement with his wife, defendant paid her $40 per month child support. SRS credited these payments to the defendant and subtracted them from the children's share of the approved grant. During the entire period payments were made, defendant was employed except for the period from January 1980 through March 1980, during which time he received unemployment compensation and did odd jobs. Defendant's income at the time of the trial exceeded $1100 per month. The defendant offered no testimony as to the exact amount received by him as income.

Castro testified that, when his wife left him in January 1980, she did not tell him where she was going. There was an attempt for a reconciliation which apparently did not work out. At the time of the hearing, defendant was living with and supporting his wife and three children. Mrs. Castro owned a two bedroom house in Pomona which she owned during the entire time support payments were paid by SRS. Defendant kept the pay-

ments on the house current at all times, and it appears that Mrs. Castro, at least a part of the time, lived in the home. Defendant was not sure of the exact times that his wife occupied the family home. Defendant testified that he attempted several times to have his wife come home with the children, and that at no time did he refuse to let them live in his home.

This action was filed by SRS on November 9, 1982, pursuant to K.S.A. 39-718a and K.S.A. 39-755. In the petition, it was alleged that SRS had paid $8,376.21 in assistance since July of 1975, by reason of the fact that the defendant had been continuously absent from home and the custodial parent, Theda L. Castro, had assigned to SRS support rights to which the children are entitled. It was further alleged that the defendant is not obligated under any current order to provide child support; that the defendant is an able-bodied man capable of supporting his minor children; and that a reasonable sum in the amount of $250 per month should be set aside as child support. In its petition, SRS sought to recover the sum of $8,376.21 for past support payments made.

In his answer, defendant admitted that he was the father of the three children named and that he was not obligated under any current court order to provide child support for the children. Defendant admitted that he was capable of supporting his children. He raised as an affirmative defense the statute of limitations and reserved the right to assert other affirmative defenses which he might learn through discovery. Defendant never filed an amended answer. The case was set for trial and the parties appeared.

In the trial court, defendant raised three legal issues for determination by the court:

(1) K.S.A. 39-718a, which provides for reimbursement to SRS from an absent parent for AFDC payments made, violates the absent parent's constitutional rights since it permits the state to recover without affording him a hearing and without taking into account the absent parent's ability to pay, station in life, health, and support payments made directly to or for his children.

(2) The defendant was not an absent parent within the meaning of the statute (K.S.A. 39-718a) because he provided support in the form of a home, medical insurance, clothing, shoes, and some food for the children.

(3) Defendant was not an absent parent under K.S.A. 39-718a,

because his wife moved out of the home taking the children with her, and therefore, defendant was not absent from the home, because he lived in the home and made payments on it.

The parties submitted trial briefs on these issues. The district court, on August 18, 1983, filed a memorandum opinion in which it entered judgment in favor of SRS in the sum of $7,596.96 to reimburse SRS for child support payments paid by SRS during the years from 1980 through 1982. The trial court refused to enter judgment in favor of the plaintiff for child support payments made during 1975 and 1976, because there was already an existing judgment in favor of the children's mother in the divorce case in the district court of Franklin County. That portion of the trial court's judgment which denied SRS recoupment for support payments made in 1975 and 1976 has not been appealed, and its validity is not before the court at this time.

The trial court rejected defendant's contention that K.S.A. 39-718a is unconstitutional as a denial of due process because it does not provide a due process hearing to the absent father. The trial court ruled, in substance, that, although SRS has the power and authority under K.S.A. 39-718a to file an action and collect child support payments made, the absent father, as the defendant, may assert whatever defenses he may have in that proceeding and, therefore, has a full right of hearing before judgment is rendered. The court further held that defendant Castro was an absent father within the meaning of the Kansas statutes and that SRS was entitled to judgment for child support payments made during 1980 through 1982. The defendant brought a timely appeal to this court.

To understand the issues raised on this appeal, it would be helpful at the outset to carefully examine the federal and state statutory provisions authorizing financial assistance to needy families with children. Prior to 1962, the program was generally known as Aid to Dependent Children. Since 1962, it has been denominated Aid and Services to Needy Families with Children. The federal statute which authorized the expenditure of substantial federal funds for aid to dependent children, was originally enacted in 1935 and may be found at 42 U.S.C.A. § 601. The purpose of the federal statute is to encourage the care of dependent children in their own homes or in the homes of relatives. The federal funds are made available to states which have

submitted state plans approved by the secretary for aid and services to needy families with children.

42 U.S.C.A. § 602 sets forth the minimum requirements for a state plan. Among other requirements, a state plan must provide, as a condition of eligibility for aid, that each applicant or recipient will assign to the state any rights to support from any other person which the applicant may have in his own behalf or in behalf of any other family member for whom the applicant or recipient is applying for or receiving aid. Each applicant or recipient under the program must also agree to cooperate with the state in establishing the paternity of a child born out of wedlock and in obtaining support payments. 42 U.S.C.A. § 606 defines a "dependent child" to mean a needy child who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent and who is living with his father or mother or other relative in a place of residence maintained as his or their own home.

The federal regulations expand on the requirements of the federal statutes and refer in a number of sections to the "caretaker" or "custodial" parent of the children and also to the "absent parent." The applicant or recipient of support funds who is living with the children is the "caretaker" or "custodial" relative of the children. 45 C.F.R. § 232.11 (1983) requires that the state plan shall require as an eligibility requirement for assistance that each applicant or recipient shall assign to the state any rights to support from any other person. Regulation § 232.12 requires the state plan to provide as a condition of eligibility for assistance that each applicant or recipient of AFDC be required to cooperate with the state in identifying and locating the parent of a child for whom aid is claimed and in obtaining support payments from him or her. An applicant or recipient is required to pay to the child support agency any support payments received from the absent parent after an assignment has been made under § 232.11.

Regulation 45 C.F.R. § 233.90(c)(1)(iii) declares that continued absence of the parent from the home constitutes the reason for deprivation of parental support or care when the parent is out of the home and the nature of the absence is such as either to interrupt or to terminate the parent's functioning as a provider of

maintenance, physical care, or guidance for the child, and the known or indefinite duration of the absence precludes counting on the parent's performance of the function of planning for the present support or care of the child. If these conditions exist, the parent may be *absent* for any reason. In regulation 45 C.F.R. § 233.90(c)(1)(B) a "home" is defined as the family setting maintained or in process of being established as evidenced by assumption and continuation of responsibility for day to day care of the child by the relative with whom the child is living. Thus, it is clear that under the federal regulations the "home" *is the home of the children.*

The Kansas plan and program, authorized by the federal statute, is contained in K.S.A. Chapter 39. K.S.A. 1983 Supp. 39-702, the definitions section, defines "dependent children" to include needy children under the age of 18 who have been deprived of parental or guardian support or care by reasons of the death, *continued absence from the home,* or physical or mental incapacity of a parent or guardian and who are living with any blood relative. K.S.A. 1983 Supp. 39-709 covers the eligibility requirements of applicants for and recipients of assistance. K.S.A. 1983 Supp. 39-709(c) provides that applying for or receiving aid under the program constitutes an automatic assignment of support rights to the secretary of SRS. K.S.A. 39-718a provides for repayment by an absent parent to the secretary of SRS for assistance provided in the following language:

"39-718a. Liability of absent parents for assistance to dependent children; powers of secretary; exception. In any case where assistance is given to dependent children by reason of the continued absence from the home of a parent, any such absent parent shall be liable to repay to the secretary of social and rehabilitation services the value of such assistance. The secretary shall have the power and authority to collect such sums by civil action brought in the name of the secretary. This act shall not apply where such absent parent has complied fully with the terms of a child support order entered by a court of competent jurisdiction."

K.S.A. 1983 Supp. 39-754 provides that, if an assignment of support rights is deemed to have been made pursuant to K.S.A. 1983 Supp. 39-709, repayment shall be made to the Department of Social and Rehabilitation Services. Section (d) of 39-754 provides that, if the secretary of Social and Rehabilitation Services has a notice of assignment of support rights on file with the court ordering support payments, the secretary shall be considered a

necessary party in interest concerning any legal action to enforce, modify, settle, satisfy or discharge an assigned support obligation and shall be given notice by the party filing such an action.

K.S.A. 39-755 authorizes the secretary of SRS, in cases where the secretary has an assignment of support rights from an applicant or recipient, to bring a civil action in the name of the State of Kansas *to enforce such support rights* and, when appropriate or necessary, to establish the paternity of a child.

The SRS administrative regulations follow and make effective the statutory scheme. K.A.R. 30-4-71 provides, in substance, that the caretaker relative shall assign the support rights to SRS. K.A.R. 30-4-72 requires that any ADC child be living with a relative in a home. K.A.R. 30-4-73 defines "continued absence from the home" in the same manner as the federal statutes and regulations discussed above. K.A.R. 30-4-74 requires that the needs of the caretaker relative be considered along with the needs of the ADC child.

Analyzing the various federal and state statutes and regulations discussed above, the following basic legal principles come into sharper focus:

(1) In order for a state to provide federal funds to a needy child under the AFDC program, there must be a "caretaker" or "custodial" relative, *i.e.* a parent or blood relative who lives with the child and provides a residence which is deemed to be the child's home.

(2) An "absent parent" is a parent who is not living with the child in the child's home and who has an obligation to provide support for the child.

(3) Where a state develops a plan and program to participate in the distribution of AFDC federal financial assistance, the federal statutes and regulations require the state to seek repayment or recoupment from an absent parent who has an obligation to support the child but who has not fulfilled that obligation.

(4) In order to make recoupment of public support funds reasonably possible, the custodial parent, who is the applicant for or recipient of the support funds, is required to assign to the state administrative agency, which in Kansas is SRS, any rights which either the custodial parent or the child has to compel the absent parent to provide support.

(5) After an assignment of support rights to SRS becomes effective on the payment of child support payments by SRS, any civil action which is brought by SRS to recover support payments from the absent parent is essentially the same cause of action which the custodial parent or the child had against the absent parent and which cause of action is assigned to the secretary. That being true, it logically follows that any defenses which the defendant father, as absent parent, could have asserted as a defense to an action brought by the mother of the child may also be asserted in the action brought by SRS for the recoupment of support payments made on behalf of the child. With these principles in mind we now turn to the issues raised on the appeal.

The first point raised by defendant is that K.S.A. 39-718a, which provides for reimbursement to SRS from an absent parent for AFDC payments, violates the absent parent's right to due process of law, because it permits the state to recover from him without affording him a hearing and without taking into account the absent parent's ability to pay, station in life, health, support payments made directly to and for his children, and any other circumstances in the case. We agree with the trial court that this contention is without merit. As noted above, the trial court ruled, in substance, that in this case the defendant, Castro, as the absent parent, could properly assert, in this action brought by SRS for recovery of support payments, any defense that Castro might have against the cause of action and, therefore, defendant was afforded a full hearing prior to the time any judgment in favor of SRS could be entered against him.

The obligation of a parent in this state to support his children was first recognized in *Harris v. Harris,* 5 Kan. *46 (1869). Since that time, this court has repeatedly held that parents have a duty to support their children and that the father has a particular duty when he is the money earner or has property in his name. *Riggs v. Riggs,* 91 Kan. 593, 138 Pac. 628 (1914); *Grimes v. Grimes,* 179 Kan. 340, 295 P.2d 646 (1956); *Strecker v. Wilkinson,* 220 Kan. 292, 298, 552 P.2d 979 (1976).

A leading case in this area is *Grimes* where this court stated that the support of children, like their custody, is a matter of social concern. It is an obligation the father owes to the state as well as to his children. He has no right to permit them to become

a public charge. The court quoted as follows from the opinion in *Doughty v. Engler,* 112 Kan. 583, 584, 211 Pac. 619 (1923):

" 'The duty of parents to provide for the *maintenance* of their children, is a principle of natural law; an obligation . . . laid on them not only by nature herself, but by their own proper act, in bringing them into the world; for they would be in the highest manner injurious to their issue, if they only gave their children life that they might afterwards see them perish. By begetting them therefore, they have entered into a voluntary obligation, to endeavor, as far as in them lies, that the life which they have bestowed shall be supported and preserved. And thus the children will have a perfect *right* of receiving maintenance from their parents.' (1 Blackstone's Commentaries, 447.)" Emphasis original.

In *Grimes,* the court held that a father cannot relieve himself of his common law or statutory obligation to support his child by entering into an agreement with a third person to assume that responsibility. This court had held in *Doughty v. Engler,* that a father of an illegitimate child too young to care for itself is under a nonstatutory obligation to support it, which may be enforced in an action brought by it through its next friend.

The action brought against a parent for past child support is deemed to be equitable in nature and the court may take into consideration all of the facts and circumstances in the case. *Grimes v. Grimes,* 179 Kan. at 344; *Rowell v. Rowell,* 97 Kan. 16, 20, 154 Pac. 243 (1916); *Riggs v. Riggs,* 91 Kan. 593. Only sums actually paid and reasonably necessary may be recovered in such an action. In *Cheever v. Kelly,* 96 Kan. 269, 150 Pac. 529 (1915), it was held in an action by a mother to recover expenditures for the support of a minor child, made necessary because of the father's neglect of parental duty, none but sums actually paid and reasonably necessary for the purpose can be recovered. The court emphasizes that the action is equitable in character and that the propriety of the expenditures made for support of the child depends upon a variety of considerations.

In *Rowell,* the defendant father contended that he could not be held liable to the mother for his neglect to provide for the maintenance and care of his children, because he had obtained a divorce from his wife on the grounds of her cruelty and neglect of duty. Since he had been separated from his children by a decree of divorce which was granted to him because of her fault, and since the children chose to reside with her, he was not liable to the children's mother in any amount. This argument was rejected

by this court which held that, where the father neglects to provide for the maintenance and care of the minor children and leaves that burden entirely to the mother, she is entitled to recover from him a reasonable amount for the expenditures she has made in providing for their care and support. *Rowell* recognized that the more appropriate and complete remedy is by opening the decree of divorce. The opinion in *Rowell*, however, states that there was no reason why the plaintiff mother could not maintain an independent action against the defendant father for the moneys already expended.

The more recent decisions of the Kansas appellate courts have continued to recognize a cause of action against a noncontributing father for reimbursement for moneys expended in support of his minor children. In *Keller v. Guernsey,* 227 Kan. 480, 488, 608 P.2d 896 (1980), it is stated that a parent's duty to support may be enforced in civil proceedings in one or more of three ways. Depending upon the circumstances of the individual case, the proper remedy may be:

(1) proceedings under K.S.A. 60-1610(*a*);
(2) proceedings under K.S.A. 23-451 *et seq.,* or
(3) an action to enforce the common-law duty of support.

In *Stapel v. Stapel,* 4 Kan. App. 2d 19, 601 P.2d 1176 (1979), *rev. denied* 227 Kan. 927 (1980), it was held that where a child has been supported during his minority by a single parent, once that child becomes an adult any right of action for reimbursement from the noncontributing parent belongs to the parent who provided that support and not to the child.

There are also several cases where the secretary of SRS was involved in an action for reimbursement for payments made by the state under the aid to dependent children program. In *Harder v. Towns,* 1 Kan. App. 2d 667, 670, 573 P.2d 625 (1977), *rev. denied* 225 Kan. 844 (1978), an action was commenced by SRS under K.S.A. 39-718a for recovery of moneys expended by the state for the care of the defendant's children. In 1974 in post-trial proceedings in a divorce case, the court approved an agreement between the parties terminating the defendant husband's obligation to support the children and thereafter, the wife received aid for the children from SRS. SRS sued defendant for the moneys expended and the defendant answered. The trial court found for the defendant father, stating that the defendant did not

have a duty to support the children because of the agreement made between himself and his wife and approved by the court. SRS appealed, challenging the validity of the court's order. In the opinion on page 669, the Court of Appeals stated that K.S.A. 39-718a creates a mechanism which enables SRS to sue either or both parents for reimbursement of funds paid out under the aid for dependent children program. It is noted that the court specifically exempts collection from parents who are acting in compliance with a court order. The court held the validity of the prior order of the court, which terminated the defendant father's duty to provide support for his children, could not be considered in that action, because it would constitute a collateral attack on the prior judgment in the divorce case which was not permissible. Thus, the defendant was afforded the opportunity of asserting the prior order in the divorce case as a defense in the action brought by SRS.

In *Sterling v. Mann,* 4 Kan. App. 2d 520, 608 P.2d 1038 (1980), it was held that K.S.A. 1979 Supp. 39-755 provides a procedure for the state to establish the paternity of the child and enforce the child's nonstatutory right to support. The court stated that it was apparent that the intent of the legislature in enacting K.S.A. 1979 Supp. 39-755 was to provide a procedure, complementary with federal law, which would permit the State to obtain reimbursement for welfare assistance paid to children who have a right to support from some other person. The case is important because it clearly shows that the statutory action provided to SRS is one to enforce the child's nonstatutory right to support and is not a completely independent right of action afforded to the State. The principle is again recognized in *Grassi v. Grassi,* 8 Kan. App. 2d 610, 663 P.2d 312 (1983).

From these statutory provisions and the Kansas decisions set forth above, we have concluded and hold that the action brought in this case by SRS pursuant to K.S.A. 39-718a and K.S.A. 39-755 to recover, from the defendant as the absent father, payments made to support his three minor children was brought to enforce the children's nonstatutory right to support, and that the defendant was not denied due process of law because whatever defenses he might have to the cause of action, either equitable or legal, could have been asserted by him in this action. Thus the

defendant's first contention that he was denied due process of law is without merit.

The defendant's second point is that he was not an absent parent within the meaning of K.S.A. 39-718a, because his undisputed testimony showed that he provided some support in the form of medical insurance, clothing, shoes, shelter, and money for the children during the period he was living apart from them. We hold that the fact that the defendant did provide some support for the maintenance of his children did not prevent him from being an absent parent within the meaning of K.S.A. 39-718a, in an action brought by SRS for recoupment. The defendant father, who was not living in the same home with his children, could properly introduce evidence of payments made by him to the mother for the support of his children. The trial court could properly consider this evidence in determining the case, along with evidence as to the reasonableness or unreasonableness of the support provided under all the circumstances of the case. A determination of who is an absent parent under the Kansas statutes is discussed under the third point.

The defendant's third and final point on the appeal is that defendant was not an absent parent within the meaning of K.S.A. 39-718a, because it was the children's mother who moved out of the family home taking the children with her. Thus defendant claims he was not absent from the home, since he actually lived in the family home and made payments on it during the period of separation. Earlier in the opinion we have discussed the basic concepts under the federal and state statutes and regulations. It is clear that the home referred to in the statute is "the place where the children reside with the custodial parent." As noted above, an absent parent is a parent who does not reside with the children and who has some parental obligation to support them. Clearly, the defendant was an absent parent under the statutory scheme. The fact that the defendant provided some support for the children is not the test. It is simply one of the many circumstances to be considered by the trial court in determining a reasonable, fair, and just support in each particular case.

The judgment of the district court is affirmed.