(830 P.2d 70)
No. 66,752

CLAUDE C. KILLINGSWORTH, *Appellee*, v. CITY OF WICHITA, KANSAS, *Appellant*.

Opinion filed April 10, 1992.

*Kendall R. Cunningham* and *Jerome E. Jones*, of Hershberger, Patterson, Jones & Roth, of Wichita, for appellant.

*Terry S. Stephens* and *Timothy J. King*, of Stinson, Lasswell & Wilson, of Wichita, for appellee.

Before LARSON, P.J., PIERRON, J., and JAMES J. NOONE, District Judge Retired, assigned.

PIERRON, J.: This appeal arises out of a workers compensation claim made by Steven Matthew Killingsworth for death benefits from Claude C. Killingsworth, his father. Benefits were awarded by the administrative law judge (ALJ), whose award was upheld by the Director of Workers Compensation and the district court. The City of Wichita appeals that award, claiming that Steven was not dependent on his father at the time of his father's death and is, therefore, not entitled to death benefits under the Workers Compensation Act, K.S.A. 44-501 *et seq.*

Claude Killingsworth, a firefighter for the City of Wichita, died while fighting a fire on December 31, 1988. Prior to his death, SRS had initiated a paternity action against him on behalf of Steven in an effort to recoup aid to dependent children benefits it had paid to Steven's mother. Killingsworth died during the paternity suit, and SRS continued the action against his estate. Ultimately, after receiving evidence of DNA test results, the

district court declared Killingsworth to have been Steven's natural father.

Steven then brought this workers compensation action in an attempt to collect death benefits as a dependent of an employee who died while in the course of employment. In this action the City stipulated that Killingsworth was Steven's natural father.

The ALJ found that since Steven was without any support other than public assistance, and since he was the natural child of Claude Killingsworth, there was no reason why he should not be held to be a wholly dependent child under K.S.A. 1991 Supp. 44-508. The Director found there was no evidence that this father/son relationship had been severed by adoption; and since there was no limiting language in the workers compensation statutes to disqualify a natural child who had not been supported by his parent in the past, the award of the ALJ should be affirmed. The district court adopted and affirmed the order of the Director. The City timely appealed.

The issue presented is whether K.S.A. 1991 Supp. 44-510b and K.S.A. 1991 Supp. 44-508(c) should be interpreted to include a child as wholly dependent even though the child was not receiving financial support from the birth parent/employee at the time of the employee's death and a duty of support had not been determined.

The City requests this court to construe 44-510b and 44-508(c) to mean that unless an employee (as of the time of death) is giving financial support to a child, or at least has been ordered by a court to do so, the child is not financially dependent on the employee under these statutes. A close look at the historical progress of the statutes and the amendments subsequent to certain cases reveals this to be an incorrect interpretation.

Neither the City nor the claimant denies that as of the time of Killingsworth's death, Steven had not received any support payments from Killingsworth. As of the time of Killingsworth's death, Steven was being supported by SRS payments to his mother.

What "wholly dependent child," as used in 44-510b and 44-508(c), means is a question of law. Our scope of review on a question of law is unlimited. *Hutchinson Nat'l Bank & Tr. Co. v. Brown,* 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied*

243 Kan. 778 (1988). Of course, in interpreting a statute "it is the function of the court to interpret a statute to give it the effect intended by the legislature." *Director of Taxation v. Kansas Krude Oil Reclaiming Co.,* 236 Kan. 450, 455, 691 P.2d 1303 (1984).

We must note initially there is no indication in the record that Steven Bruce, the common-law husband of Steven's mother who was presumed to be Steven's father for almost 10 years, has any objection to Killingsworth being named as the child's father. Bruce did appear in the paternity action, although he was not a party to that action. We presume the district court judgment regarding Steven's paternity was in compliance with *In re Marriage of Ross,* 245 Kan. 591, 783 P.2d 331 (1989), and that it was in the best interests of the child.

It would appear this is an issue of first impression as there are no Kansas cases which have expressly ruled whether a child must be receiving support or that there be a legally established duty of support at the time of a parent's death in order for the child to claim workers compensation death benefits. K.S.A. 1991 Supp. 44-510b provides:

"Where death results from injury, compensation shall be paid as provided in K.S.A. 44-510 and amendments thereto, and as follows:

"(a) If an employee leaves any dependents wholly dependent upon the employee's earnings at the time of the accident, all compensation benefits under this section shall be paid to such dependent persons. . . .

"(1) If the employee leaves a surviving legal spouse or a wholly dependent child or children, or both, who are eligible for benefits under this section, then all death benefits shall be paid to such surviving spouse or children, or both, and no benefits shall be paid to any other wholly or partially dependent persons."

The appellant would have us construe 44-510b to mean that Steven must have been financially dependent on Killingsworth's earnings at the time of the accident. The statutory definition of "wholly dependent child," however, does not support the appellant's contention:

" 'Dependents' means such members of the employee's family as were wholly or in part dependent upon the employee at the time of the accident.
. . . .

"(3) Wholly dependent child or children means:

"(A) A birth child or adopted child of the employee except such a child whose relationship to the employee has been severed by adoption;

"(B) a stepchild of the employee who lives in the employee's household;

"(C) any other child who is actually dependent in whole or in part on the employee and who is related to the employee by marriage or consanguinity; or

"(D) any child as defined in subsections (3)(A), (3)(B) or (3)(C) who is less than 23 years of age and who is not physically or mentally capable of earning wages in any type of substantial and gainful employment or who is a full-time student attending an accredited institution of higher education or vocational education." K.S.A. 1991 Supp. 44-508(c)(1) and (3).

A plain reading of the statute convinces us a wholly dependent child includes a birth child (or natural child), whether financially dependent or not.

Steven was a birth child of Killingsworth and is, therefore, according to the statutory definition, a "wholly dependent child." By defining a "wholly dependent child" simply as a birth child or adopted child and by not requiring that such child show a financial need or dependency, the legislature has clearly spoken. Legislative intention is expressed by omission as well as by inclusion, and when the legislature intends to make an exception or qualification to a general right, it does so expressly. See, *e.g.*, *Clintsman v. St. Joseph Hosp. of Concordia*, 11 Kan. App. 2d 199, 717 P.2d 1074 (1986).

Workers compensation statutes are to be interpreted in favor of the worker if more than one construction is possible and the construction is compatible with the legislative intent. *Houston v. Kansas Highway Patrol*, 238 Kan. 192, 195, 708 P.2d 533 (1985). Assuming this, it is even more clear that a birth child is a "wholly dependent child" regardless of whether the child was relying on that employee's earnings at the time of the employee's death. The statutes authorizing the determination of parenthood, for instance, indicate that once a man is determined to be a child's father "the court may include a requirement that an additional amount be paid to reimburse the expenses of support and education of the child *from the date of birth* to the date the order is entered and the necessary medical expenses incident to the birth of the child." K.S.A. 1991 Supp. 38-1121(d). (Emphasis added.)

Case law in accord with this parental support theory includes *State ex rel Secretary of SRS v. Castro,* 235 Kan. 704, 684 P.2d 379 (1984). In *Castro* the court recognized that since 1869 this state has acknowledged the obligation of parental support and that the father has a particular duty when he is the wage earner. 235 Kan. at 711. Relying on earlier Kansas cases, the *Castro* court stated that fathers have no right to permit their children to become public charges, and fathers of illegitimate children are still under a nonstatutory obligation to support their children who are too young to care for themselves. 235 Kan. at 711-713 (*citing Grimes v. Grimes,* 179 Kan. 340, 295 P.2d 646 [1956]). See *Sterling v. Mann,* 4 Kan. App. 2d 520, 608 P.2d 1038 (1980).

Lending additional support to the proposition that a father's child is a dependent regardless of whether the child is financially dependent at the time of death is *Routh v. List & Weatherly Construction Co.,* 124 Kan. 222, 225, 257 Pac. 721 (1927). In *Routh* the court held that a child born after an employee's accident and before the employee's death resulting from the accident is still a dependent of the employee under Kansas workers compensation law even though the child was unborn and not yet financially dependent at the time of the accident. The holding of *Routh* was expanded in *Green v. Burch,* 164 Kan. 348, 189 P.2d 892 (1948). In *Green* the court held that an illegitimate posthumous child could recover compensation as a dependent under Kansas workers compensation law. The appellant had argued that recovery for workers compensation should be limited to legitimate children only. Once the court held that illegitimate children had not been excluded from recovery by the legislature (as it had done by limiting recovery to "legal widows" only, 164 Kan. at 354), it further concluded that illegitimate children born both before and after the worker's death were dependents within the meaning of the law and were entitled to maintain actions for workers compensation. 164 Kan. at 357-58. This is in accord with our general principles about interpreting workers compensation statutes.

"Throughout our many decisions construing the workmen's compensation act since its enactment, this court has been firmly committed to the rule of liberal construction of the act in order to award compensation to the workman where it is reasonably possible to do so, and to make the legislative

intent effective and not to nullify it." *Brinkmeyer v. City of Wichita,* 223 Kan. 393, 396, 573 P.2d 1044 (1978).

A historical analysis of 44-508 and 44-510b further supports the interpretation suggested.

The issue in *Brinkmeyer* was whether a "surviving legal spouse," who had been separated from her husband, could claim his death benefits. Just before the husband was killed, he had decided to reunite with his wife. The City of Wichita resisted paying the death benefits because it felt that the wife, who was employed, was not "dependent" upon the husband's salary. The controlling statute in effect in *Brinkmeyer,* K.S.A. 1974 Supp. 44-510b, read as follows:

"Where death results from injury, compensation shall be paid . . . as follows:

"(a) If a workman leaves any dependents wholly dependent upon his earnings at the time of the accident, all compensation benefits under this section shall be paid to such dependent persons."

The statute goes on to determine how the money should be distributed between a surviving legal spouse and dependent children. The court found a conclusive presumption of dependency for surviving legal spouses and held that it conformed with the definition of "dependent" contained in K.S.A. 1974 Supp. 44-508. The court said, "Such a construction gives meaning to the act's reference to *surviving* spouses on the one hand and *dependent* children on the other, which explains the absence of provisions for partially dependent spouses." 223 Kan. at 397. *Brinkmeyer* was announced January 21, 1978.

The 1979 Kansas Legislature amended K.S.A. 44-508 and 44-510b. The relevant changes included substituting "surviving legal spouse and children" in 44-508 for the prior language of "legal widow or husband, as the case may be, and children." Additionally, an entirely new section was added as 44-508(c)(3), defining "wholly dependent child or children." At that time 44-508(c)(3)(A) read: "A natural or adopted child or a stepchild of the employee who lives in the employee's household." The latter amendment could have been subject to two interpretations: First, that a natural child, an adopted child, and a stepchild were all required to live in the employee's household to be "wholly dependent"; second, that a natural or adopted child was simply

considered to be "wholly dependent," while a stepchild was required to live in the employee's household in order to be "wholly dependent."

After the 1979 amendments, *Hegwald v. Clarkson Constr. Co.,* 7 Kan. App. 2d 375, 642 P.2d 573 (1982), was decided. The issue in *Hegwald* was whether the children of the deceased worker were "wholly dependent" on their father's earnings as required by 44-510b at the time of his death. The trial court found this was a question of fact and looked for substantial competent evidence. It found that the father was under a legal obligation to support the children as there had been a divorce and the father had been ordered to pay child support. In that case the court found that a natural father has a legal duty to support children and that duty gives children a reasonable expectation of future support. The court held there was substantial competent evidence to support the trial court's determination that the children had a reasonable expectation of support from their father and were "wholly dependent" upon him for their support at the time of his death, despite the fact that the father had not been paying support and the children were actually receiving money from SRS through their mother. 7 Kan. App. 2d at 377.

After *Hegwald*, the legislature again amended 44-508 and 44-510b. *Hegwald* was filed March 18, 1982, and the 1983 legislature redefined a "wholly dependent child" as "[a] natural or adopted child of the employee except such a child whose relationship to the employee has been severed by adoption." L. 1983, ch. 167 § 1. Noticeably absent from the new definition of a wholly dependent child was the requirement that the child live in the employee's household. "Ordinarily, courts presume that by changing the language of a statute the legislature intends to change its effect." [Citation omitted.] *Citizens State Bank of Grainfield v. Kaiser,* 12 Kan. App. 2d 530, 536, 750 P.2d 422, *rev. denied* 243 Kan. 777 (1988).

Subsequent amendments have made the statute clearer. The definition of a wholly dependent child was amended by the 1991 legislature to read: "A *birth child* or adopted child of the employee except such a child whose relationship to the employee has been severed by adoption." K.S.A. 1991 Supp. 44-508(c)(3)(A). The most recent amendment makes it even more apparent that

the statute intends to include a person's biological child as a "wholly dependent child" of that person as far as the Kansas Workers Compensation Act is concerned. That child then is entitled as a dependent to make a claim when the worker dies.

The City construes language in 44-510b which requires that the dependent be wholly dependent "at the time of the accident" to require a financial dependency on Killingsworth at the time of his death. This contention simply is not supported by the statute. The statute uses the words "wholly dependent child" and chooses to define those words. The legislature has chosen the words and the definition, and we must structure our interpretation in accordance thereto.

Our decision is in accord with the deference that we should give the Director's order. While the Director's order is not binding on this court, his opinions are subject to this court's careful consideration since he is the person charged with day-to-day administration of the Workers Compensation Act. *Brinkmeyer,* 223 Kan. at 397. It is also in accord with the obvious purpose of the Act, which is "to secure workmen and their dependents against becoming objects of charity by allowing reasonable compensation for all such calamities as are incidental to employment." *Green v. Burch,* 164 Kan. 348, 356, 189 P.2d 892 (1948).

We affirm the trial court's order affirming the order of the Director of Workers Compensation.