(844 P.2d 37)

No. 67,933

R.L.J. and J.J.J., By and Through Their Conservator, BRENDA WIENS, Dependents of MICHAEL L. JONES, Deceased, *Appellants,* and M.P.J., By and Through His Conservator, LYDIA JONES, n/k/a LYDIA SMITH, Alleged Dependent of MICHAEL L. JONES, Deceased, *Appellee,* v. WESTERN SPRINKLERS, INC., and FEDERATED MUTUAL INSURANCE COMPANY, *Appellees.*

Opinion filed December 23, 1992.

*Mark E. McFarland,* of Doering & Grisell, P.A., of Garden City, for appellants.

*Gerald O. Schultz,* of Garden City, for appellee M.P.J.

*Jeffrey E. King,* of Hampton, Royce, Engleman & Nelson, of Salina, for appellees Western Sprinkler, Inc., and Federated Mutual Insurance Company.

Before BRAZIL, P.J., PIERRON, J., and STEVEN R. BECKER, District Judge assigned.

PIERRON, J.: This case is before the court following a district court review of a workers compensation action. The district court held there was sufficient evidence to find that the minor child, M.P.J., was the son of the deceased employee, Michael Jones, thereby overturning the decision of the administrative law judge

(ALJ) and the Director of Workers Compensation. Jones' two minor children from his marriage are appealing the district court's decision.

The facts can be summarized as follows. Michael L. Jones died in a work-related accident in November 1987. He was survived by two dependent children: R.L.J. and J.J.J. At the time of Michael's death, Lydia Jones was pregnant. She was not married to Michael or anyone else at the time. Lydia gave birth to a son, M.P.J., on April 1, 1988. She claims that M.P.J. is a wholly dependent child of Michael and is entitled to survivor benefits under workers compensation. K.S.A. 1991 Supp. 44-510b(a)(1).

The ALJ found there was insufficient evidence to support a determination that M.P.J. was the natural child of Michael. The district court on de novo review found there was sufficient evidence to find M.P.J. was the child of Michael and a "wholly dependent child" entitled to benefits pursuant to K.S.A. 1991 Supp. 44-508(c).

The following evidence of paternity was presented:

Lydia Jones testified Michael fathered her child. She testified they engaged in sexual intercourse during the time of conception and she was not intimate with anyone else during this period of time. No one contradicted or confirmed this testimony. Lydia also testified she informed Michael he was the father of her child and he gave her $25 to help pay for a physician's visit for prenatal care. She also testified Michael spent several nights a week at her apartment during June and July of 1987. Lydia and Michael were not married, did not plan to be married, and discussed marriage only in general terms, if at all.

Five acquaintances of Michael and Lydia testified. They were of the opinion that, Michael was the father of Lydia's child. However, each said Michael never stated he was the father. Each witness testified he or she found out about the pregnancy from Lydia or some third party. They assumed Michael was the father based on their impressions of Lydia and Michael's relationship.

Christine Anderson testified she asked Michael how he felt about "the news." He responded that "it was coming sooner or later." She assumed they were talking about Lydia's pregnancy, but neither Christine or Michael ever specifically stated that.

Anderson testified that Jacque Horner witnessed this conversation. However, Horner could not remember the conversation.

Four witnesses testified the child resembled Michael. The alleged physical similarities included similar noses; similar facial and body structure; and similar smiles. One person testified when he looked at the baby "it was just one of them things you just feel in your body. It looked like him." Lydia testified M.P.J. has blond hair and blue eyes. Michael had brown hair. Lydia could not remember what color Michael's eyes were, but she thought they were brown.

Lydia's landlady testified neighbors told her Michael's car was frequently parked in front of Lydia's house all night during the summer of 1987. The landlady could not confirm whether Michael and Lydia were spending the night together because the landlady worked nights. She also testified she overheard Michael and Lydia joking about the baby's sex, but she did not hear Michael claim or deny paternity.

Michael's family was not aware Lydia was pregnant until she told them at Michael's funeral. Michael is not listed on the birth certificate as the father of M.P.J.

Two witnesses testified they felt Lydia's claim for social security and workers compensation benefits for M.P.J. were based, at least in part, on the fact that she was "greedy" or having financial problems.

This case centers on defining the term "wholly dependent child" of the covered employee and on the standard of proof that must be applied. In *Killingsworth v. City of Wichita,* 16 Kan. App. 2d 801, 830 P.2d 70 (1992), this court focused on the term "wholly dependent." The instant case focuses on the term "child." K.S.A. 1991 Supp. 44-508(c)(3)(A) defines a wholly dependent child as "a birth child or adopted child of the employee." M.P.J. claims he is the birth child of Michael. However, no presumption of paternity applies to this case, and there has never been a judicial determination of paternity.

M.P.J. argues that a separate judicial determination of paternity is not required before a minor is declared a wholly dependent child entitled to workers compensation survival benefits. As authority for this position, M.P.J. cites *Green v. Burch,* 164 Kan.

348, 189 P.2d 892 (1948), and *Killingsworth v. City of Wichita,* 16 Kan. App. 2d 801.

It is true that neither of these cases specifically states paternity must be determined before benefits are awarded. However, in *Green* there was a presumption of paternity; the father and mother held themselves out as married and the father openly acknowledged his paternity of the children. 164 Kan. at 349. In *Killingsworth,* SRS had initiated a paternity suit against the employee which was concluded after his death and prior to the workers compensation action. In the paternity suit, the district court had found the employee was the claimant's natural father due to the results of DNA testing. In the later workers compensation action the defendant stipulated to the employee's paternity. 16 Kan. App. 2d at 802.

Appellee M.P.J. also attempts to position this case as one involving a constitutional question. He argues that, when awarding workers compensation benefits, illegitimate children cannot be treated differently from legitimate children. This is clearly true. *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 31 L. Ed. 2d 768, 92 S. Ct. 1400 (1971). However, this case does not present a question of legitimate versus illegitimate. The question in this case is whether the claimant is a child of the worker, whether legitimate or not.

The Kansas courts have never been confronted with the question of whether a separate judicial determination of paternity in a paternity proceeding must precede an award of workers compensation benefits, where proof of paternity is a necessary incident to a determination of dependency for benefit eligibility purposes. Some jurisdictions that have considered this question have held in the negative. *See Bettelon v. Metalock Repair Service,* 137 Mich. App. 448, 358 N.W.2d 608 (1984); *Goins v. Lott,* 435 N.E.2d 1002 (Ind. App. 1982).

Several jurisdictions have held that a workers compensation hearing board or officer may make this determination. See *Jones v. Industrial Commission,* 64 Ill. 2d 221, 356 N.E.2d 1 (1976); *Goins v. Lott,* 435 N.E.2d 1002; *Bettelon v. Metalock Repair Service,* 137 Mich. App. 448. However, this determination may be limited to paternity for purposes of workers compensation benefits. *Bettelon v. Metalock Repair Service,* 137 Mich. App.

at 454. We find, *for purposes of workers compensation benefits only*, that a workers compensation ALJ or reviewing court may determine parentage in the course of an appropriate workers compensation case. Any such finding would not be binding in any other way. We find that the purposes of the Workers Compensation Act allow this less comprehensive approach.

The second question is what evidentiary standard should apply.

In a workers compensation action, the claimant bears the burden of proof. The trier of fact must consider the whole record. K.S.A. 1991 Supp. 44-501(a). Burden of proof is defined as "the burden of a party to persuade the trier of facts by a preponderance of the credible evidence that such party's position on an issue is more probably true than not true on the basis of the whole record." K.S.A. 1991 Supp. 44-508(g). Since this is a workers compensation action, a preponderance of evidence is the evidentiary standard.

Were this a paternity action to resolve for all purposes the question of parentage, a stricter burden would be required and concerns about allowing "a living woman to swear the paternity of illegitimate offspring upon a dead man" would be given more weight. *Gross v. VanLerberg*, 231 Kan. 401, 402, 646 P.2d 471 (1982).

This ruling is consistent with the finding in *Gross* that there is a distinction between finding paternity in the abstract and finding paternity as just an element in a child's action for benefits under some compensation law. *Gross*, 231 Kan. at 406. This ruling presumes there has been no other court determination on the issue.

Under this ruling, we find the trial judge did not abuse his discretion in finding that M.P.J. is the child of Michael Jones. Although another finder of fact might have ruled otherwise, the conclusion is supported by substantial competent evidence.

Affirmed.

BRAZIL, J., dissenting: I respectfully dissent. The majority limits the determination of parentage in a workers compensation case to the award of workers compensation benefits only. This means that parentage must be relitigated by the heirs if, as in this case, the worker is deceased and there are other assets, insurance benefits, social security benefits, etc. Of course, there is a real

possibility that parentage might be decided differently before a different court applying a different evidentiary standard.

The Kansas Parentage Act, K.S.A. 38-1110 *et seq.,* provides a comprehensive framework for determining paternity. The purpose of the Act is to serve the best interests of the child and to ensure that all legal rights and obligations of a parent-child relationship are carried out. *In re Marriage of Ross,* 245 Kan. 591, Syl. ¶ 1, 783 P.2d 331 (1989).

I would require a formal paternity action and a judicial declaration of paternity prior to an award of workers compensation benefits. Courts are more familiar with the procedures and evidentiary standards that should be employed in such a case. Moreover, the use of hearsay testimony can be more strictly controlled in a judicial proceeding.

In the alternative, the administrative law judge should be encouraged to use the presumptions of paternity and evidentiary standards set out in K.S.A. 38-1114 and K.S.A. 1991 Supp. 38-1119(a).